IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>$97,040.00 IN UNITED STATES CURRENCY,<br><br>　　　　　　Defendant. | 8:15CV362<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the United States' motion to strike claim and for partial summary judgment, Filing No. 44, and also on the motion for summary judgment on behalf of claimants and cross claimants Nathan Pecor, Jonathan Perdue, and Robert Tatro, Filing No. 49. The United States filed a complaint for forfeiture in rem, Filing No. 1 and Filing No. 21, pursuant to 21 U.S.C. § 881. Claimants and cross claimants contend that the defendant currency in the amount of $97,040.00 belongs to them.

**BACKGROUND**

The United States argues the following facts. On or about April 28, 2015, Douglas County Deputy Sheriff Jason Bargstadt, while patrolling Interstate 80 in Omaha, Nebraska, determined that a vehicle being driven by Nathan Pecor and Jonathan Perdue was following a vehicle too closely. Nathan Pecor was the driver. Perdue was the passenger. Both had Massachusetts's driver's licenses. Deputy Bargstadt believed he smelled the odor of marijuana coming from inside the car. He asked Pecor where they were headed. Pecor replied to Las Vegas to gamble. He

asked Pecor several times if there were any large sums of money in the vehicle. He responded no on all occasions. Deputy Eric Olson arrived on the scene to assist. The deputies searched the vehicle. They found a user amount of marijuana. They found two backpacks, one contained $52,000.00 that was bundled and rubber-banded, and the other contained $45,040 that was bundled and rubber-banded. The total sum was $97,040.00. Canine Voss later alerted to the two sums in two separate sterile locker rooms.

The claimants responded to the complaint and asked for a jury trial. Claimants contend this is their money and not the product of purchase or sale of drugs or narcotics. They assert that they intended to use the money to gamble in Las Vegas. Claimants further filed a cross claim against the United States pursuant to 42 U.S.C. § 1983. In their answer to the United States' amended complaint, claimants simply deny each of the allegations in the amended complaint and did not request a jury trial or file a cross claim.

The claimants contend that Pecor and Perdue were taking the money given to them by Tatro to Las Vegas to gamble and to attend an equipment auction. According to the claimants, Tatro owned $85,000.00; Pecor owned $4,000.00; and Perdue owned $7,000.00. Pecor and Perdue went to Tatro's house and picked up the money prior to making the trip. They each had a bag with part of the money. They were on their way to Las Vegas when they were stopped. Tatro contends that his $85,000.00 came from selling six vehicles after his business closed. He has some receipts and bank statements that he argues support his argument. Tatro is 56-years old and has been in the trucking business most of his life, including owning his business called Tatro

Trucking. Tatro has also for many years gone to auctions to buy and sell vehicles and equipment such as pickup trucks, motorcycles, cars, semis, and heavy equipment. He contends that he has made hundreds of thousands of dollars in his business. In 2015, Tatro began talking with Pecor and Perdue about going on a trip to Las Vegas with him to potentially help Tatro bring back vehicles and equipment from auctions in the Las Vegas area and to have some fun in Las Vegas. Pecor and Perdue were to rent a car, so that they could help drive vehicles back to Massachusetts.

Perdue was subsequently charged in Douglas County with possession of 1 ounce or less of marijuana and one count of possession of drug paraphernalia. The possession charge against Perdue was dropped and Perdue pled guilty to one count of possession of drug paraphernalia. Pecor was not charged with any crime or violation.

**STANDARD OF REVIEW**

On a motion for summary judgment, the question before the Court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing

3

affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once the defendant meets his initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e)(2); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show there is sufficient evidence to support a jury verdict in his or her favor. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.,* 167 F.3d 398, 401 (8th Cir. 1999). "In ruling on a motion for summary judgment a court must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

**DISCUSSION**

*a. Standing*

The Government contends that the claimants have no statutory or Article III standing to raise their claims. The Court disagrees. The Court finds the claimants have met their burden in this regard.

A claimant's "Article III standing turns on whether the claimant has a sufficient ownership interest in the property to create a case or controversy." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003). "This threshold burden is not rigorous: 'To have standing, a claimant need not prove the underlying merits of the claim. The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property.'" *Id.* at 1013 (quoting, *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002)). In the Eighth Circuit, "a colorable ownership interest 'may be evidenced in a number of ways including showings of actual possession, control, title and financial stake.'" *Id.* (quoting *United States v. One 1945 Douglas C-54 (DC-4) Aircraft*, 647 F.2d 864, 866 (8th Cir. 1981).

In the case before this Court, all three claimants came forward and claimed ownership of some part of this money. Tatro claimed title to the largest amount, and the other two claimants were in possession and control of the money. Tatro did not make a "bare" assertion of ownership as argued by the United States. Instead, he tells a story of acquiring this money through his business over the years; of attending and purchasing at auctions; and of giving this money to the other two claimants, Pecor and Perdue, prior to him flying to Las Vegas.

With regard to statutory standing, a claimant must come forward and state the claimant's interest in the property. Fed. R. Civ. P. Supp. R. G(5)(a)(i)(B); *United States*

*v. $154,853.00*, 744 F.3d 559, 563 (8th Cir. 2014). As stated herein, the claimants have made such a claim, supported by evidence and argument.

### *b. Claimants' motion for summary judgment*

Claimants contend they have submitted sufficient evidence to entitle them to summary judgment on the claim of ownership of the subject cash. The Court disagrees. There must be a substantial connection between the property and controlled substance to permit forfeiture. 18 U.S.C. § 983(c)(3); *United States v. $124,700 in U.S. Currency*, 458 F.3d 822, 825 (8th Cir. 2006). The burden is on the Government to establish forfeiture. If the Government meets its burden, in order to avoid forfeiture the claimant has the burden of proving by a preponderance of the evidence that they are innocent owners. 18 U.S.C. § 983(d)(1). An "innocent owner" is defined as "an owner who (i) did not know of the conduct giving rise to the forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A).

Like the claimants, the Government has set forth sufficient facts to create disputed material facts. For example, the Government contends that Perdue and Pecor have changed their story about the amount of money belonging to them. They initially lied about whether they had a substantial amount of money in the vehicle. Tatro was not present during the traffic stop, and neither Perdue nor Pecor mentioned his name. Perdue and Pecor first mentioned they were going to Las Vegas to gamble, but they initially made no mention of the auctions in Las Vegas. The currency was packaged in a way consistent with drug proceeds. *See United States v. $12,390.00*, 956 F.2d 801 (8th Cir. 1992) ("In addition, the money seized from the residence was wrapped in rubber

bands, which, according to the unimpeached testimony of a narcotics officer, is characteristic of the way drug money is stored.") *Id.* at 806. For these reasons, the Court finds the claimants have not met their burden, and this case will proceed to trial.

THEREFORE, IT IS ORDERED THAT:

1. The motion to strike claim, Filing No. 44, filed by the United States is denied;

2. The motion for summary judgment, Filing No. 49, filed by the claimants is denied.

Dated this 24th day of July, 2017.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge